MDR

1
2
3
4
5
6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   Donnie Phillips,                    )    No. CV 1-08-1388-FJM
                                        )
10          Plaintiff,                  )    **ORDER**
                                        )
11   vs.                                )
                                        )
12   Timothy Turmezei, et al.,          )
                                        )
13          Defendants.                 )
                                        )

14

15          On August 22, 2008, Plaintiff Donnie Phillips, who is confined in the Pelican Bay

16   State Prison in Crescent City, California, filed a *pro se* civil rights Complaint pursuant to 42

17   U.S.C. § 1983 in the Sacramento Division of the United States District Court for the Eastern

18   District of California.  In a September 17, 2008 Order, United States Magistrate Judge

19   Kimberly J. Mueller ordered the case transferred to the Fresno Division of the Court.

20   Plaintiff filed an Objection to the intradistrict transfer.

21          In a February 12, 2009 Order, the Court denied Plaintiff's Objection to the intradistrict

22   transfer and dismissed Plaintiff's Complaint because he had failed to comply with Rules 8

23   and 10 of the Federal Rules of Civil Procedure.  The Court gave Plaintiff 30 days to file an

24   amended complaint that cured the deficiencies identified in the Order.

25          On March 16, 2009, Plaintiff filed an "Amended Objection to Court's Jurisdiction

26   Interdistrict Transfer Order" (Doc. #18) and a First Amended Complaint (Doc. #19).

27   . . . .

28

JDDL

1    **I.      Statutory Screening of Prisoner Complaints**

2          The Court is required to screen complaints brought by prisoners seeking relief against

3    a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

4    § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

5    claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

6    be granted, or that seek monetary relief from a defendant who is immune from such relief.

7    28 U.S.C. § 1915A(b)(1), (2).

8    **II.     First Amended Complaint**

9          In his nine-count First Amended Complaint, Plaintiff sues the following Defendants:

10   Office for Correctional Safety-Sacramento Law Enforcement and Investigations Officer A.

11   Murphy; Department of Justice - Sacramento attorney Kelli M. Hammond; Corcoran State

12   Prison Yard Sergeant J. Hill; Pelican Bay State Prison "S.H.U. Receiving and Release"

13   Property Officer R. Tucker; Appeals Director N. Grannis.  He also sues the following

14   Defendants who are employed at the California Correctional Institution-Tehachapi: Assistant

15   Gang Investigator Timothy Turmezei, Warden William J. Sullivan; Institutional Gang

16   Investigations Lieutenant Jeoffrey Gentry; Institutional Gang Investigations Sergeant Nestor

17   Verdin; Senior Correctional Officer S. Holland; and Law Library Supervisor Peterson.  In

18   his Request for Relief, Plaintiff seeks declaratory and injunctive relief, monetary damages,

19   attorney's fees, and his costs of suit.

20   **III.    Discussion of Individual Counts in First Amended Complaint**

21         Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519,

22   520-21 (1972), conclusory and vague allegations will not support a cause of action.  Ivey v.

23   Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  Further,

24   a liberal interpretation of a civil rights complaint may not supply essential elements of the

25   claim that were not initially pled.  Id. To state a valid claim under § 1983, plaintiffs must

26   allege that they suffered a specific injury as a result of specific conduct of a defendant and

27   show an affirmative link between the injury and the conduct of that defendant.  See Rizzo

28   v. Goode, 423 U.S. 362, 371-72, 377 (1976).

## A.     Count One

In Count One, Plaintiff alleges that Defendants Hill, Turmezei, Verdin, Murphy, and Gentry retaliated against him in violation of his First Amendment right to petition the government for a redress of grievances.

Plaintiff alleges that Defendant Hill participated in a "conspiracy" by investigating Plaintiff; seizing, destroying, and withholding Plaintiff's property; and "designing" a transfer. These vague and conclusory allegations are insufficient to state a claim. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (explaining the requirements of a conspiracy claim under § 1983); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); see also Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). Thus, the Court will dismiss Count One against Defendant Hill.

Plaintiff's vague allegations that Defendants Turmezei and Verdin "immediately perpetuated the retaliations," seized and held his property, and "tactfully add[ed] transfer-seizures," are insufficient to state a claim of retaliation. When an inmate brings a claim of retaliation, he must allege that the prison official acted in retaliation for the exercise of a constitutionally protected right and that the action did not reasonably advance a legitimate penological interest. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (a viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal). Therefore, the Court will dismiss Count One against Defendants Turmezei and Verdin.

1   Plaintiff claims that Defendants Murphy and Gentry assisted in falsely validating
2   Plaintiff as a gang member and that they did so, not because of Plaintiff's conduct, but in
3   retaliation for Plaintiff attempting to obtain redress against prison staff through the federal
4   courts.   Liberally construed, Plaintiff's allegations in Count One state a claim against
5   Defendants Murphy and Gentry.  The Court will require Defendants Murphy and Gentry to
6   answer Count One.

7        **B.      Count Two**

8        In Count Two, Plaintiff alleges that Defendants Sullivan, Holland, and Peterson
9   retaliated against him in violation of his First Amendment right to petition the government
10  for a redress of grievances.  Plaintiff asserts that Defendant Holland fabricated a narrative
11  to place Plaintiff in the harshest segregation conditions and confiscated Plaintiff's legal
12  materials and property complaints.  Plaintiff alleges that Defendant Sullivan exonerated
13  Defendant Holland's conduct and authorized the submission of a false gang validation, the
14  re-seizure of Plaintiff's legal property and subsequent delivery of that property to Defendant
15  Peterson, and the placement of Plaintiff in a cell with no mattress.  Plaintiff claims Defendant
16  Peterson returned Plaintiff's legal materials, but did so by providing Plaintiff with 3000 loose
17  pages in a trash bag, and denied Plaintiff access to the law library prior to Plaintiff's civil
18  trial in federal court.  Plaintiff claims Defendants "consorted acts" were not done because of
19  any conduct by Plaintiff, but, rather, as "an acceptable response to [Plaintiff's] grievances
20  against staff."  He alleges that these Defendants' conduct ruined his civil trial, his "habeas
21  redress," and his future opportunities to ever "work and program positively towards parole."

22       Liberally construed, Plaintiff has stated a claim in Count Two against Defendants
23  Sullivan, Holland, and Peterson.   The Court will require Defendants Sullivan, Holland, and
24  Peterson to answer Count Two.

25       **C.      Count Three**

26       In Count Three, Plaintiff alleges that Defendants Turmezei, Murphy, and Sullivan
27  retaliated against him and violated his First Amendment right to freedom of religion when
28  Defendants Murphy and Turmezei apparently confiscated Plaintiff's bible—the "holy crips

1   bible"—and when other prison staff confiscated Plaintiff's crucifix and chain because
2   Defendant Sullivan overrode the statewide prison property policy.

3       To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege
4   that a defendant burdened the practice of plaintiff's religion by preventing him from
5   engaging in a sincerely held religious belief and that the defendant did so without any
6   justification reasonably related to legitimate penological interests. Shakur v. Schriro, 514
7   F.3d 878, 884-85 (9th Cir. 2008). Plaintiff has failed to allege a violation of the First
8   Amendment because he has failed to allege that he was prevented from engaging in a
9   sincerely held religious belief. Moreover, as to the crucifix and chain, he does not allege that
10  Defendant Sullivan did not have a legitimate penological interest in altering the statewide
11  policy.[1] Therefore, the Court will dismiss Count Three without prejudice.

12      **D.   Count Four**

13      In Count Four, Plaintiff alleges that Defendants Hammond, Murphy, and Sullivan
14  violated his First Amendment right to petition the government for redress by interfering with
15  his access to the courts.

16      Plaintiff alleges that Defendant Hammond deliberately facilitated three retaliations
17  against him. Plaintiff claims that (1) the prison's distress alarm was activated and this
18  terminated his visit with his family; (2) based on a "call from Sacramento," his mail was
19  processed by Defendant Hill during "2nd watch" rather than during "1st watch"; and
20  (3) Defendant Hill explained to Plaintiff that Plaintiff's property had been seized because
21  "Sacramento" had authorized Defendant Hill to make Plaintiff's life a "living hell." Plaintiff
22  has failed to state a claim because he has failed to link these events to any specific conduct
23  by Defendant Hammond.

24

25

---

26      [1]The Court notes that Plaintiff has also failed to state a claim under the Religious Land
27  Use and Institutionalized Persons Act of 2000 because he has failed to allege that Defendants
    have imposed a substantial burden on his religious exercise and that the burden does not
28  further a "compelling governmental interest" by "the least restrictive means." 42 U.S.C.
    § 2000cc-1(a)(1)-(2). See also Shakur, 514 F.3d at 888.

1    Plaintiff also asserts that Defendant Hammond received Plaintiff's "Habeas Corpus

2   Ad Testificandums listing several inmate witnesses" during the course of discovery in

3   another lawsuit by Plaintiff and "deliberately" provided this discovery information to

4   Sacramento's Law Enforcement and Investigations Unit.  Not only are Plaintiff's allegations

5   vague, it appears that Plaintiff is alleging that Defendant Hammond was acting as a defense

6   attorney for the California Department of Corrections and Rehabilitation (CDCR) when she

7   provided the discovery information to a unit within the CDCR.  It is unclear how this conduct

8   is outside the scope of her representation of the CDCR or how this conduct interferred with

9   Plaintiff's access to the courts.  The Court will dismiss Count Four against Defendant

10   Hammond because Plaintiff has failed to state a claim against her.

11    Plaintiff alleges that Defendant Murphy retaliated against Plaintiff by "sudden and

12   aggressive retaliatory prison gang investigations and property seizures premised on

13   [Plaintiff's] civil redress against [Defendant Murphy's] colleagues, and not any prison gang

14   conduct [by Plaintiff]."  The only event Plaintiff discusses in Count Four in relation to

15   Defendant Murphy is the same event Plaintiff discussed against Defendant Murphy in Count

16   One.  Thus, the Court will dismiss Plaintiff's claim in Count Four against Defendant Murphy

17   because it is duplicative.

18    Plaintiff alleges that Defendant Sullivan, "[s]ubsequent to various 'certified'

19   notifications [from two district courts and from Plaintiff,] facilitated deliberate chills to

20   [Plaintiff's] rights to petition the government for redresses, even transferring [Plaintiff's]

21   property to [D]efendant Peterson (after having just issued [Plaintiff's] property per Court

22   Order) who absolutely 'denied' [Plaintiff] all and 'every access' to the library."  Plaintiff also

23   contends that Defendant Sullivan "[o]rdered or permitted federal mail stamped 'legal' to be

24   lost until beyond the enclosed court deadline and engineered transfers which chilled

25   [Plaintiff's] rights, deprived [Plaintiff of] access[,] and has ultimately dev[a]stated [Plaintiff]

26   mentally."

27    Plaintiff's claims in Count Four against Defendant Sullivan are entirely vague and

28   conclusory and lacking in any detail.  The one allegation that has any factual specificity—his

1   allegation that Defendant Sullivan transferred Plaintiff's property to Defendant Peterson—is

2   duplicative of Plaintiff's allegations in Count Two.   Therefore, the Court will dismiss Count

3   Four against Defendant Sullivan.

4           **E.     Counts Five, Six, and Nine**

5           In Count Five, Plaintiff alleges a violation of his Fourteenth Amendment rights to due

6   process and equal protection because (1) Defendant Hill seized Plaintiff's property and

7   informed him that his property had been donated and that  "Sacramento" had authorized

8   Defendant Hill to make Plaintiff's life a living hell; and (2) Defendant Grannis apparently

9   informed Plaintiff that his property had been donated.  In Count Six, Plaintiff alleges a

10  violation of his Fourteenth Amendment due process rights because Defendant Tucker refused

11  to return some of Plaintiff's property and destroyed Plaintiff's property, and Defendant

12  Grannis "mechanically parroted [in a Director's Level review] a denial."   In Count Nine,

13  Plaintiff alleges a violation of his due process and equal protection rights because Defendant

14  Grannis protects "criminal  property  thefts  perpetuated  by  staff . . . [by]  parroting

15  (duplicating) the allegation or narrative provided."  Plaintiff claims that Defendant Grannis

16  has reduced "C.D.C.R.'s Administrative Remedy doctrine . . . to mechanical–unnecessary

17  defer[r]als to various courts who[] can only entertain the governing elements of a matter

18  without having jurisdiction over the matter its self."

19          A state employee who intentionally and without authorization deprives a person of his

20  property does not violate the Due Process Clause if a meaningful post-deprivation remedy

21  for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California law

22  provides inmates with an adequate post-deprivation remedy for property losses.  Barnett v.

23  Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).  Therefore, the Court will dismiss without

24  prejudice Plaintiff's due process claims in Counts Five, Six, and Nine.

25          Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause of the

26  Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or

27  purpose to discriminate against the plaintiff based upon membership in a protected class."

28  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff does not allege that

1  Defendants discriminated against him based on his membership in a protected class.  The

2  United States Supreme Court has also recognized "successful equal protection claims brought

3  by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated

4  differently from others similarly situated and that there is no rational basis for the difference

5  in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Plaintiff has not

6  made such allegations.  Thus, the Court will dismiss without prejudice Plaintiff's equal

7  protection claims in Counts Five and Nine.

8         **F.**    **Count Seven**

9        In Count Seven, Plaintiff alleges a violation of the Eighth Amendment prohibition

10  against cruel and unusual punishment and asserts that there were "state created liberty

11  violations imposing atypical and significant hardships."  First, Plaintiff alleges that an officer

12  placed Plaintiff in a "deplorable cell smeared with dark brown feces."  Plaintiff alleges that

13  the officer stated that the cell was "reserved" for Plaintiff "complements of" Defendant

14  Murphy and a sergeant at the facility.   Second, Plaintiff asserts that he was subjected to

15  "immediate and malicious transfers" after he filed a grievance—presumably regarding the

16  cell conditions.  Third, Plaintiff alleges that Defendant Murphy's phone calls "imposed

17  atypical and significant hardships" by "inspiring" Defendant Tucker to dispose of Plaintiff's

18  property.

19        Plaintiff's allegations regarding the feces-smeared cell do not adequately demonstrate

20  a link between the conditions in the cell and any specific conduct by Defendant Murphy, nor

21  does Plaintiff discuss how long he was subjected to these conditions.  See Hutto v. Finney,

22  437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding

23  whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a

24  diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.").

25  Plaintiff's assertions regarding Defendant Murphy's phone calls are vague and conclusory

26  and do not adequately state a claim.  Plaintiff's statement regarding malicious transfers is not

27  linked to the conduct of any Defendant.  Thus, Plaintiff has failed to state a claim in Count

28  Seven, and the Court will dismiss it.

### G.     Count Eight

In Count Eight, Plaintiff alleges a violation of his Fourteenth Amendment due process and equal protection rights because Defendants Murphy, Turmezei, and Verdin provided, submitted, and accepted as belonging to Plaintiff certain prison gang materials. Plaintiff appears to assert that the materials were in his possession because they were "listed as if belonging to one of [Plaintiff's] Habeas Corpus Ad Testificandum witnesses and belonging to a prison gang." Plaintiff claims this information was used to secure a "dishonest" gang validation and that, therefore, there was not "some evidence" to support the gang validation. See Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (for California's gang validation procedure, due process only requires that the inmate receive notice of the charges and an opportunity to present his views and that there be "some evidence" to support the validation). Liberally construed, Plaintiff has stated a claim in Count Eight against Defendants Murphy, Turmezei, and Verdin.

## IV.   Amended Objection to Court's Jurisdiction Intradistrict Transfer Order

In his "Amended Objection to Court's Jurisdiction Intradistrict Transfer Order," Plaintiff requests that the Court alter Magistrate Judge Mueller's "intradistrict conclusions" because (1) the case is "foundationally" a First Amended Claim based on retaliations "engineered and approved in Sacramento"; (2) a judge in the Sacramento Division "enunciate[d] a willingness to entertain (after exhausted) [Plaintiff's] T.R.O. issues that chronologically entail the transfers, the property seizures and the validation plots which have now come to fruition"; (3) most of the potential "muckracker/whistleblower witnesses" are currently employed in the Sacramento Division.

The Court has considered Plaintiff's objections to Magistrate Judge Mueller's decision to transfer the case to the Fresno Division. The Court, in its discretion, will not alter that decision.

. . . .

. . . .

. . . .

**V.     Warnings**

    **A.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

    **B.     Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u> LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's "Amended Objection to Court's Jurisdiction Intradistrict Transfer Order" (Doc. #18) is **denied**.

(2)     Counts Three, Four, Five, Six, Seven, and Nine of the First Amended Complaint are **dismissed without prejudice**.

(3)     Defendants Hammond, Hill, Tucker, Grannis are **dismissed** without prejudice.

(4)     Defendants Murphy and Gentry must **answer Count One**, Defendants Sullivan, Holland, and Peterson must **answer Count Two**; and Defendants Murphy, Turmezei, and Verdin must **answer Count Eight** of the First Amended Complaint.

(5)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. #19), this Order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants Murphy, Turmezei, Sullivan, Gentry, Verdin, Holland, and Peterson.

1    (6)    Within **30 days** of the date of filing of this Order, Plaintiff must complete and

2    return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit

3    with the Notice of Submission of Documents: a copy of the First Amended Complaint for

4    each Defendant, a copy of this Order for each Defendant, a completed summons for each

5    Defendant, and a completed USM-285 for each Defendant.

6    (7)    Plaintiff must not attempt service on Defendants and must not request waiver

7    of service.  Once the Clerk of Court has received the Notice of Submission of Documents and

8    the required documents, the Court will direct the United States Marshal to seek waiver of

9    service from each Defendant or serve each Defendant.

10    (8)    **If Plaintiff fails to return the Notice of Submission of Documents and the**

11    **required documents within 30 days of the date of filing of this Order, the Clerk of Court**

12    **must, without further notice, enter a judgment of dismissal of this action without**

13    **prejudice.**  See **Fed. R. Civ. P. 41(b).**

14    DATED this 19th day of June, 2009.

15

16

17

18    Frederick J. Martone
     United States District Judge

19

20

21

22

23

24

25

26

27

28