**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donnie Phillips, | No. 1:08-cv-1388-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Timothy Turmezei, et. al., | |
| Defendants. | |

The court has before it defendants Murphy, Turmezei, Verdin, Gentry, Holland, Sullivan, and Peterson's motion for summary judgment (doc. 52), plaintiff Donnie Phillips's response (doc. 67), and defendants' reply (doc. 71).

Plaintiff is a California State Prisoner alleging violations of the First and Fourteenth Amendment. We screened plaintiff's amended complaint and found service appropriate on: (1) Murphy, Turmezei, and Verdin for Due Process and Equal Protection violations; (2) Murphy and Gentry for First Amendment Retaliation; and (3) Sullivan, Holland, and Peterson for First Amendment Retaliation (doc. 21).

The basis of plaintiff's due process and equal protection claims arises out of his validation as a gang member. Defendants began investigating whether plaintiff was an

associate of the Black Guerilla Family ("BGF")[1] after they discovered letters where plaintiff pledged his alliance to Crips leaders.[2] The investigation led to the discovery of six independent pieces of evidence including: (1) three letters written by plaintiff referencing "Black August," a symbolic event for BGF; (2) an address book which included the names and addresses of two BGF associates; (3) written material referencing BGF affiliates; and (4) two photocopied sheets with the image of BGF founder George Jackson. After discovering this evidence, defendants provided plaintiff with a copy of all documents, interviewed him, and sent the final validation packet to the Office of Correctional Safety which validated plaintiff. See Cal. Code. Reg. tit. 15 § 3378. Plaintiff claims this validation violated his Fourteenth Amendment Due Process and Equal Protection rights because it consisted of false documents and was initiated in discrimination of his religion, i.e., his Crips gang membership.

Additionally, in November 2005, defendants placed plaintiff in administrative segregation pending an investigation into his involvement with threats made against staff. Plaintiff also was placed in leg restraints and served food on a paper tray. Believing defendant Holland fabricated stories about plaintiff which resulted in these actions, plaintiff wrote to the Office of Internal Affairs. The warden, defendant Sullivan, responded to plaintiff's letter instructing him that he was placed on restraint status based on threats he had made and not at the direction of defendant Holland. On December 29, 2005, defendants temporarily transferred plaintiff to California State Prison, Sacramento, for a federal court appearance. Plaintiff's property did not transfer with him but was returned the day after he returned to the California Correctional Institution. Finally, on July 7, 2006 plaintiff submitted a request to attend the law library which defendant Peterson denied. On August

---

[1] The Black Guerrila Family is formally recognized as one of the original California prison gangs by the Department Operations Manual section 52070.17.2.

[2] The Institutional Gang Investigations Unit at the California Correctional Institution was assigned to review all correspondence to and from Black inmates after numerous threats against staff were made by Black inmates in December 2005.

4, 2006, plaintiff submitted an administrative grievance requesting law library access that also was denied. Plaintiff claims that in each of these instances defendants violated his First Amendment constitutional rights by retaliating against him for filing various administrative grievances. We address each of plaintiff's claims in turn.

**A. Violation of Fourteenth Amendment Due Process Rights and Equal Protection**

Plaintiff claims that defendants Murphy, Turmezei, and Verdin violated his due process rights by submitting prison gang materials which were not his in an effort to secure a dishonest gang validation. Defendants deny any allegations of improper motive and assert that six valid, independent items of evidence were used to validate plaintiff. Specifically, defendants point to evidence that plaintiff corresponded with BGF members, had pictures of the founder of BGF, and had letters referencing BGF. Plaintiff does not dispute that the letters or the address book were his. Instead, plaintiff claims naivete as to the meaning of his writings (i.e., its gang symbolism), that the correspondence is protected as it relates to his trial, and that the address book is outdated and therefore not relevant.

Due Process requires that "some evidence" support a decision to place an inmate in a Security Housing Unit for gang affiliation. Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003). The standard, however, is only "minimally stringent," requiring a court to ask whether there is any evidence in the record that could support the conclusion reached. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). Furthermore, many district courts also require that the evidence contain "some indicia" of reliability. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-64 (N.D. Cal. 1995) (applying the Ninth Circuit's reliability requirement in the context of prison disciplinary proceedings to administrative proceedings as well).

We find that defendants clearly have shown "some evidence" to satisfy due process requirements for plaintiff's gang validation. Defendants point to six pieces of independent, reliable evidence of gang affiliation. See Cal. Code. Reg. tit. 15, § 3378 (listing types of evidence indicating gang affiliation). Plaintiff does not dispute that he wrote the letters or that the pictures of George Jackson were his. Even if we accept plaintiff's argument that the address book evidence is stale because it is from the late 1990s, the letters were all written

- 3 -

1  less than one year before discovery and are not protected simply because they may relate to
2  litigation. Because just one source of reliable information is sufficient to satisfy the federal
3  due process standard, we find that the standard is met here.
4        We also find that defendants are entitled to summary judgment on plaintiff's equal
5  protection claim. To state a section 1983 claim for a violation of the Equal Protection
6  Clause, plaintiff must show that defendants acted with an intent or purpose to discriminate
7  against him based upon membership in a protected class. Barren v. Harrington, 152 F.3d
8  1193, 1194-95 (9th Cir. 1998). In both his Amended Complaint and deposition, plaintiff
9  alleges that his religion, or membership in Crips, formed the basis of defendants' alleged
10 disparate treatment. Gang membership is not a protected class, and therefore plaintiff's equal
11 protection claim fails. See Watts v. Runnels, 2007 WL 2898563, No. 2:03-cv-01928-JKS-
12 GGH-P, *1 (E.D. Cal. September 28, 2007). Furthermore, we reject plaintiff's attempt to
13 change the basis of his claim by arguing in his Response that defendants actually
14 discriminated against him on the basis of race. Plaintiff's deposition clearly states that
15 religion, not race, formed the basis of his equal protection claim. See doc. 67 at 16. Even
16 reading the Amended Complaint in the light most favorable to plaintiff, we find no assertions
17 of a race based equal protection claim that would have put defendants on notice. See Bd.
18 of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (stating that a liberal
19 interpretation of a civil rights complaint may not supply essential elements of the claim that
20 were not initially pled). Therefore, we grant defendants' motion for summary judgment on
21 plaintiff's equal protection claim.

22 **B.  Retaliation Claims**

23       Plaintiff asserts various First Amendment retaliation claims against defendants
24 Murphy, Gentry, Holland, Sullivan, and Peterson. When an inmate brings a claim of
25 retaliation, he must allege that the prison official acted in retaliation for the exercise of a
26 constitutionally protected right and that the action did not reasonably advance a legitimate
27 penological interest. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). A
28 viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that

a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmates exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. Id.

Plaintiff first alleges that defendants Gentry and Murphy falsely validated him in retaliation for attempting to obtain redress against prison staff through the federal courts. Defendants argue that Gentry and Murphy could not have retaliated against plaintiff because they were not involved in validating plaintiff. Furthermore, defendants assert that a legitimate correctional purpose in detecting and deterring organized prison-gang violence motivated the validation, not retaliation. See Bruce, 351 F.3d at 1289 (finding that defendants had a valid penological interest in investigating and validating a prisoner's gang status). Plaintiff offers no evidence, other than mere conjecture, that defendants Gentry and Murphy were involved in plaintiff's gang validation. Defendants, on the other hand, have produced evidence than neither defendant was involved, DSOF ¶¶ 29-30, and that their actions reasonably advanced a legitimate correctional goal. Therefore, we grant summary judgment on plaintiff's retaliation claim against defendants Gentry and Murphy.

Plaintiff also asserts a retaliation claim against defendants Holland and Sullivan. Plaintiff claims that defendant Holland fabricated a report that plaintiff was a threat to staff, which caused plaintiff to be escorted in leg restraints and fed on a paper tray. Additionally, plaintiff claims that defendant Holland withheld plaintiff's legal property for over a month after he was transported to Sacramento to appear in court. Defendants submitted evidence, which plaintiff does not contradict, that defendant Holland merely reported an alleged incident to his supervisors who then ordered plaintiff's punishment. Plaintiff bears the burden of proving that his protected conduct was a "substantial" or "motivating" factor behind defendants' conduct. See Soranno's Gasco Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff has not done so. Reliance on conjecture and conclusory statements is insufficient. As to the alleged deprivation of property, defendants admit that plaintiff was without his property for a month, but contend that defendant Holland was unaware of this

- 5 -

1    and ultimately returned plaintiff's property once he returned to prison. A negligent or
2    intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the
3    state has an adequate post deprivation remedy, which California does. See Barnett v.
4    Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). Thus to the extent that plaintiff alleges a
5    deprivation of property, that claim fails as a matter of law.

6    As to defendant Sullivan, defendants argue that there is no evidence, other than
7    plaintiff's speculation, that defendant Sullivan was involved in the seizure of plaintiff's
8    property, withholding his property, or his custody placement. Under section 1983, plaintiff
9    must demonstrate that each defendant personally participated in the deprivation of his rights.
10   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Defendant Sullivan did issue a letter
11   instructing plaintiff that supervisors, not defendant Holland, ordered his punishment. That
12   letter, however, does not create a genuine issue of material fact that defendant Sullivan
13   himself authorized the acts of which plaintiff complains. Moreover, even if defendant
14   Sullivan was involved, plaintiff again has failed to show that defendant Sullivan knew
15   plaintiff filed grievances and retaliated against him because of that. Accordingly, we grant
16   defendants' motion for summary judgment on this claim.

17   Finally, plaintiff raises a retaliation claim against defendant Peterson for denying him
18   access to the law library and providing plaintiff with 3,000 loose pages of documents in a
19   garbage bag. By plaintiff's own admission, however, he has no evidence, other than his own
20   speculation, that defendant Peterson was motivated by his protected conduct or involved in
21   some sort of conspiracy to deny him access to the courts. See DSOF ¶ 61. Plaintiff even
22   admits that defendant Peterson returned the papers to him because she was instructed to do
23   so. Moreover, even liberally construing the Amended Complaint to allege an independent
24   claim of denial of the right of access to the courts, we find that plaintiff fails to allege
25   sufficient facts to prevail. Inmates enjoy access to law libraries as a guarantee of their due
26   process rights, but an inmate must plead the underlying cause of action to put defendants on
27   notice and to allow courts to determine that the inmate was deprived of an opportunity to
28   present a "nonfrivolous" or "arguable" claim. See Christopher v. Harbury, 536 U.S. 403,

415-16, 122 S.Ct. 2179, 2187 (2002) (holding that identification of the underlying cause of action is necessary to state a claim for denial of the right of access to the courts); see also Lewis v. Casey, 518 U.S. 343, 353, and n. 3., 116 S.Ct. 2174, 2181 (1996). Plaintiff has alleged no such facts, other than stating that defendants ruined his civil trial and "habeas redress" (Amended Complaint at 4) and "ultimately chilled" him (Response at 13). Plaintiff has not plead the underlying cause of action or created a genuine issue of material fact that he suffered an actual injury.

Therefore, because there exists no genuine issue as to any material fact, defendants are entitled to judgment as a matter of law.

**ACCORDINGLY, IT IS ORDERED GRANTING** defendants' motion for summary judgment in its entirety (doc. 52). All the claims against all the parties having been resolved, the clerk shall enter final judgment in favor of defendants and against plaintiff.

DATED this 23rd day of February, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge